**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROXANNE BARDROFF | * | |
| Plaintiff, | * | Civil Action No.: 1:21-cv-3161 JMC |
| v. | * | |
| SANEXEN WATER, INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, Roxanne Bardroff, and submits this memorandum in opposition to the Motion for Summary Judgment filed by the Defendant, Sanexen Water, Inc.

### STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248, (1986)).

When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Furthermore, disputed questions of fact must be

resolved in favor of the non-moving party at the summary judgment *stage. Meyers v. Balt. County*, 713 F.3d 723, 730 (4th Cir. 2013). See Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979) (holding that summary judgment is not appropriate if the resolution of material issues depends upon credibility determinations).

"Because of the peculiarly elusive nature of the concept of negligence, it is the rare personal injury case which may be properly disposed of by summary judgment." *Bland v. Norfolk & S. R. Co.*, 406 F.2d 863, 866 (4th Cir. 1969) (granting summary judgment on an affirmative defense but noting that this was a rare exception); *see Gauck v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965) (holding that "because of … the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed"); *see also Smith v. Tennessee Valley Auth.*, 699 F.2d 1043, 1045 (11th Cir. 1983) (holding that "the party seeking to have an issue of negligence withdrawn from the jury in federal court bears a heavy burden").

I.  SANEXEN WAS NEGLIGENT

A.  SANEXEN CREATED THE DANGEROUS CONDITION

In Keene v. Arlan's Dep't Store, Inc., 35 Md. App. 250, 256, 370 A.2d 124, 128 (1977), the Appellate Court of Maryland recognized that "[t]here is a distinction to be made between those cases which occur as a result of some

overt action by the owner or his employees" and "those which for convenience have been designated as foreign object, notice type of cases. In the first type, *notice is usually not an issue since the owner or his employees are alleged to have created the dangerous condition."* (emphasis added).

In the instant case, Sanexen argues lack of notice and relies on cases wherein there was no allegation that the premises owner itself created the dangerous condition. However, the evidence reveals that the dangerous condition here was created entirely by Sanexen, such that it is not necessary to prove notice.

As described in Sanexen's summary judgment motion, Sanexen began a large project in plaintiff's neighborhood to rehabilitate the water main system. The project began in April 2018 and, despite Sanexen's representations that the job would be complete in three months, the work creeped along through the end of the year due to Sanexen's lackadaisical efforts to remove its equipment, to the inconvenience of Roxanne Bardroff and her neighbors.

The dangerous condition at issue is asphalt loosened by a pipe that was installed by Sanexen in front of Bardroff's home months before her injury. Sanexen covered the pipe with asphalt so that cars and pedestrians would be able to proceed through the neighborhood. However, several weeks before her injury, Sanexen had disconnected the pipe, leaving it exposed at the ends. As a result of no longer being fastened at both ends, it began to slowly rise up and out of the asphalt from cars driving over it:

**17 Q But I think you indicated earlier, before
18 the pipe was disconnected, immediately before that
19 happened, this asphalt that we see in Exhibits 10
20 and 11 was covering the yellow pipe?
21 A It was still covering it. That slowly
emerged up over the weeks' time, it came up and out
2 of the ground. From time, me driving over the
3 driveway, and as it loosened, it bounced and
4 eventually came up out of that side.**

**(Plaintiff's deposition pp. 88:17 - 21, 89:1 - 4).**

Further, Roxanne Bardfroff was quite clear that neither Sanexen nor anyone else had lifted the pipe out of the asphalt:

**5 Q And so that wasn't any workmen from
6 Sanexen or anyone else coming and lifting that pipe
7 or removing the asphalt over the top?
8 A No.
9 Q That was just a natural progression from
10 the point that the pipe was disconnected?
11 A Right.**

**(Plaintiff's deposition pp. 88:17 - 21, 89:1 - 4).**

B.  THE DOCTRINE OF RES IPSA APPLIES

> Successful invocation of the res ipsa loquitur doctrine requires the plaintiff to prove three elements: (1) a casualty of a sort which usually does not occur in the absence of negligence; (2) caused by an instrumentality within the defendants exclusive control; and (3) under circumstances indicating that the casualty did not result from the act or omission of the plaintiff.

Cogan Kibler, Inc. v. Vito, 346 Md. 200, 202, 695 A.2d 191, 192 (1997).

In the instant case, the three elements are present:

As to the first element, Sanexen placed the asphalt over the pipes for the purpose of keeping the pipes covered.  Had the asphalt been maintained, it would

not have loosened to the point of allowing sections of the pipe to rise out of it and further allowing the surrounding asphalt to be insecure.

As to the second element,

> [t]he doctrine of res ipsa loquitur does not apply if the defendant is not in exclusive control or management of the injurious agency. In order to establish this doctrine of res ipsa loquitur, one of the essential elements required is that the thing which is the proximate and natural cause of the injury is wholly in the possession and control of the one party or the other. The independent neglect of another as the efficient and proximate cause of the injury must be excluded. An inference of negligence cannot be drawn unless the thing which produced the injury was under the management and control of the defendant. Res ipsa loquitur does not apply where the defendant does not have control of the instrumentality.

Chesapeake & Potomac Tel. Co. v. Hicks, 25 Md. App. 503, 504, 337 A.2d 744, 746 (1975)

Sanexen installed the water pipes and covered them with asphalt. Bardroff testified that no one had taken any action with respect to the pipe or the asphalt after Sanexen performed its work. The "instrumentality" in this case is the rising pipe which caused the asphalt to loosen.

Although it was Bardroff's driving over the disconnected pipe which caused the pipe to rise and the asphalt to loosen, the doctrine of res ipsa still applies because Bardroff did nothing wrong in driving over it. The asphalt existed to be driven over. In the absence of "fault" Sanexen is still liable for its negligence:

> As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient if his negligence concurring with one or more efficient causes *other than the plaintiff's fault*, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being

sufficient that his negligence is an efficient cause, without which the injury would not have resulted to as great an extent and that such other cause is not attributable to the person injured.

Stitzel v. Kurz, 18 Md. App. 525, 535-36, 308 A.2d 430, 436 (1973) (rev'd on other grounds)(emphasis added).

## C.  SANEXEN HAD ACTUAL NOTICE

Contrary to Sanexen's argument that it had no notice of the danger, Bardroff testified that she did contact them in the weeks prior to her injury, informing them that a section of the pipe had come loose from the asphalt and had become a trip hazard and, further, that the surrounding asphalt could become loose as well.  Sanexen's representatives responded that they would resolve the issue:

**19 I had been asking them please remove
20 the pipe. I had been asking them over and over
21 again to please can you get this part cleaned up,
1 it's the holidays. You know, it was trick or
2 treating, it was Halloween, and I had put up --
3 because I didn't want any kids falling out in front
4 of my house. I actually put tape -- what do you
5 call -- I had my husband put out cones and the -- so
6 no one would come to our house. You know, they
7 would not trick-or-treat on our property at all.
8 Because I didn't want the kids at
9 night falling on this coming up and down the
10 sidewalks. So we had no trick-or-treaters. I had
been telling them the week before, can you get the
12 pipe up, it's Halloween, the kids are going to be
13 coming around.
14 Yeah, yeah, we're getting to it.**

**19 That's what the guys
20 kept telling me.**

**(Plaintiff's deposition pp. 67:19 - 21, 68:1 - 10, 12 - 14, 19 -20).**

She further testified**:**

**6 Q You're not aware that anyone else told**
**7 them about the asphalt being loose at this location,**
**8 right?**
**9 A No. I mean, I told them that it's going**
**10 to get loose, that it's going to be a problem. You**
**11 guys got to get rid of this.**

**(Plaintiff's deposition p. 103: 6-11).**

Sanexen was therefore on notice of the pipe rising from the asphalt and causing it to loosen. Sanexen cannot treat the receipt of these warnings as notice only of the pipe being a trip hazard. Once it was put on notice of the pipe loosening the asphalt, it was on notice of all foreseeable harms which could arise from that condition. "Whether foreseeability is being considered from the standpoint of negligence or proximate cause, the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, the question is whether the actual harm fell within a general field of danger which should have been anticipated." Dalmo Sales of Wheaton, Inc. v. Steinberg, 43 Md. App. 659, 672-73, 407 A.2d 339, 346 (1979).

II.  BARDROFF DID NOT ASSUME THE RISK

Assumption of the risk is a defense applicable to negligence claims. The defendant bears the burden of proof. ADM Partnership v. Martin, 348 Md. 84 (1997). Specifically, "the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily

confronted the risk of danger." Id. at 90-91 (citations omitted). The doctrine of assumption of risk rests upon an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk." Rogers v. Frush, 257 Md. 233, 243 (1970).

There was no evidence that Bardroff "had knowledge" of the risk of danger, that she "appreciated" that particular risk of danger or that she "|voluntarily" confronted the risk of danger. To the contrary, Bardroff's observations up to that point were that the asphalt surrounding the pipe was loose, as in merely soft. She did not expect it to sink and crumble beneath her foot. She described what happened as she stepped on it:

**2 The**
**3 asphalt is loose. I don't realize how loose it is,**
**4 and it sinks and crumbles, and I fall.**

**(Plaintiff's deposition p. 63:2 - 4).**

And further:

**16 I thought it was strong enough to hold, and it**
**17 didn't, and it crumbled and there I went. That was**
**18 it.**

**(Plaintiff's deposition p. 67:16- 18).**

The Court of Appeals has held that, under these circumstances, a plaintiff does not assume the risk:

In Imbraguglio v. A&P, 358 Md. 194 (2000), the Court considered the conduct of a warehouse worker who was killed when he fell from a pallet without

any guardrails despite the fact that such pallets were provided by the warehouse for use by the workers.   The Court cited with approval Restatement (Second) of Torts § 496D (1965), dealing with "Knowledge and Appreciation of Risk":

> Except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character...The basis of assumption of risk is the plaintiff's consent to accept the risk and look out for himself. Therefore he will not be found, in the absence of an express agreement which is clearly so to be construed, to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character, and extent which make it unreasonable. Thus the condition of premises upon which he enters may be quite apparent to him, but the danger arising from the condition may be neither known nor apparent, or, if known or apparent at all, it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk. His failure to exercise due care either to discover or to understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.

The language from the Restatement is particularly helpful, because Bardroff did not have reason to appreciate the "nature, character, and extent" of an unreasonable danger.  The risk of any real danger from stepping on loose asphalt was unexpected.

Finally, Bardroff stepped on the asphalt but she did not do so voluntarily. Bardroff testified that a raised pipe was blocking her other means of getting into her house:

**8  I have to get out of the passenger side**
**9 and I have to walk around, and there's only one way**
**10 to get up there is to go around and go up the**
**11 driveway because you can't get there from that side.**

**12 You can't get to that section. The pipe is up in
13 the air completely there, so you have to walk up the
14 driveway. There's no other way to get into my
15 property other than walk around and up the driveway
16 at that point.**

**(Plaintiff's deposition p. 93:8 - 16).**

In <u>ADM Partnership</u>, 348 Md. at 93 (1997) the Court observed: "It follows, therefore, that, in order for a plaintiff to assume voluntarily a risk of danger, there must exist 'the willingness of the plaintiff to take an informed chance,'; there can be no restriction on the plaintiff's freedom of choice either by the existing circumstances or by coercion emanating from the defendant." Bardroff's freedom of choice was curtailed by Sanexen having created a hazard with the raised pipe blocking her means of access to her home.

III.  BARDROFF WAS NOT CONTRIBUTORILY NEGLIGENT

In <u>Diffendal v. Kash & Karry Serv. Corp.</u>, 74 Md. App. 170, 172, 536 A.2d 1175, 1176 (1988), the Appellate Court of Maryland reiterated the definition of contributory negligence:  "Contributory negligence is defined as conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negligence of the defendant in bringing about the plaintiff's harm."

Contributory negligence is ordinarily for the fact finder to consider, and therefore would not be appropriate for resolution on a summary judgment motion:

> The question of contributory negligence must be considered in the
> light of all the inferences favorable to the plaintiff's case that may be
> fairly deduced from the evidence. Where there is a conflict of

> evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom, the question should be submitted to the jury. In order that a case may be withdrawn from the jury on the ground of contributory negligence, the evidence must show some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds
> [...]
> The standard of care to be used in measuring contributory negligence is the conduct of an ordinarily prudent person under the same or similar circumstances, and not that of a very cautious person, and even if the doing of what was done turns out to have been an error of judgment, that of itself does not make the act negligence if an ordinarily prudent person would have made what proves to have been the same error.

Id.

In this case, Bardroff believed the asphalt was loosening, but that it looked "solid" and that she did not expect that it would give way completely. To her, it was similar to the "risk" of walking on rain soaked ground - the ground would be soft, perhaps a bit mushy, but it would not collapse beneath your feet. (Pl. Opp. Ex. 1).

In McKenzie v. Egge, 207 Md. 1, 10, 113 A.2d 95, 99 (1955), a tenant was injured when a porch collapsed while she was on it. She had previously reported to the landlord that the porch was in disrepair and "shaky." In finding that the tenant was not contributorily negligent as a matter of law, the Court held:

> But it does not follow that because she knew of the defective condition and complained of it, she was necessarily aware of the full extent of the risk. Cf. Dean v. Hershowitz, supra. The testimony was that she did not do more than place her arm on the rail, that she did not lean on it as she did when operating the block and tackle. Mrs. Piper testified that she did not appear to lean on the rail. Whether

> her action was so negligent under all the circumstances as to bar recovery would seem to present a question for the jury, as in <u>Edelman v. Monouydas</u>, supra, where the tenant knew that the window cord was frayed, but not that it would break without warning in the act of raising the window.

<u>Id</u>. at 10, 99.

In <u>Ensor v. Ortman</u>, 243 Md. 81, 220 A.2d 82 (1966), the Supreme Court of Maryland held that a tenant who stepped onto a porch which she knew to be in disrepair was not contributorily negligent as a matter of law. The Court held that merely knowing that the porch was defective, including having a buckled floor, did not as a matter of law mean that she would expect the floorboards to give way beneath her. " <u>Id</u>. at 89, 87.

The <u>Ensor</u> Court confirmed that Restatement (Second) of Torts § 473 has been adopted as the law in Maryland "in cases of this nature where the defendant's negligence interfered with the plaintiff's right to use a portion of the premises." <u>Id.</u> In these cases, "such a plaintiff is not guilty of contributory negligence in so using even though he knowingly exposed himself to a risk of bodily harm unless the risk was unreasonable." <u>Id.</u> In this case, Bardroff chose to encounter the asphalt as a more safe means of ingress to her home rather than encounter the trip hazard presented by the raised pipe which Sanexen had failed to remove.

Finally, the tag which Sanexen placed on Bardroff's door does not support an argument for contributory negligence. The tag stated that a temporary surface network would be installed to maintain the water supply to the neighborhood

while the water mains were rehabilitated. (Def. Mot. Ex. 6). The tag advised to "take care while walking or driving near the network." Given that the flier refers to a surface network which will be running the water supply to the entire neighborhood, the directive to "take care" could more logically be construed as a request that the residents take precautions to avoid damage to the network, rather than as a concern for the residents to avoid injury to themselves. Indeed, it would be hard to fathom how injuries could be sustained by anyone "driving near the network." This is how Bardroff interpreted it. (Pl. Opp. Ex. 1). Regardless, as Bardroff testified, by the time of her injury, the temporary network was no longer in place, the water mains having been reconnected.

**9 Q Including they ask you to please take care**
**10 when walking and driving near the temporary water**
**11 network?**
**12 A Yes, while it's in working condition. It**
**13 was not in working condition when I fell.**
**14 Q I understand. The words working condition**
**15 do not appear on this form, right?**
**16 A It will be operational for the duration of**
**17 the rehabilitation work. So it is saying it's**
**18 operational. So it was not operational at the time.**

(Plaintiff's deposition p. 72:9 - 18).

CONCLUSION

For the reasons stated, this Court should deny Sanexen's motion for summary judgment.

_____
Darren Margolis  #23806
Darren Margolis, P.A.
104 Church Lane, Suite 203
Baltimore, Maryland 21208
(410) 777-5539; Fax (410) 777-5243
dmargolis@lawdmpa.com
Attorney for Plaintiff