IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROXANNE BARDROFF,** | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| v. | * | Civil Case No: 1:21-cv-03161-JMC |
| | | |
| **SANEXEN WATER, INC.**, | * | |
| | | |
| *Defendant.* | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Roxanne Bardroff filed this trip-and-fall negligence action against Defendant Sanexen Water, Inc. in a Maryland state court on November 9, 2021. (ECF No. 1 at p. 1).[1] On December 13, 2021, Defendant filed its Notice of Removal predicated on Defendant's entitlement "to removal because there is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy exceeds $75,000.00." *Id.* at p. 2. Presently before the Court is Defendant's Motion for Summary Judgment (ECF No. 34). In addition to Defendant's Motion, the Court also has considered Plaintiff's Opposition (ECF No. 39) and Defendant's Reply (ECF No. 42). The Court concludes that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, Defendant's Motion is denied.

**I.   BACKGROUND**

At the time of the fall giving rise to the case *subj judice*, Plaintiff lived at 2632 Matthews Drive, Parkville, Maryland. (ECF No. 34-2 at p. 9). In April 2018, Defendant began working on the water system on Matthews Drive, and the work was scheduled to last until approximately July

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

2018.  *Id.* at p. 71.  Near the beginning of Defendant's work, Defendant placed temporary water pipes across the entire length of Matthews Drive.  *Id.* at pp. 72–73, 86.  In addition to placing temporary pipes, Defendant placed a door hanger on Plaintiff's door.  *Id.* at pp.70–71.  The hanger read, in pertinent part:

> In order to maintain the water supply to your home, a temporary surface water network made of plastic pipes and/or flexible hoses will be installed.  It will be operational for the duration of the rehabilitation work.  We ask you to please take care when walking and driving near the temporary water network.

(ECF No. 34-6).  Plaintiff interpreted this warning as a warning for those living in the neighborhood to avoid damaging the temporary water network.  (ECF No. 39-2, Affidavit of Plaintiff).

Defendant has provided photographs—Exhibit Nos. 6, 10, and 12—taken by Plaintiff in close proximity to Plaintiff's November 11, 2018 fall.  (ECF Nos. 34-3, 34-4, & 34-5).  Plaintiff took these photographs facing away from her house and towards Matthews Drive.  The pipe involved in Plaintiff's case was approximately six inches in diameter.  *Id.* at p. 66.  At the locations in which the temporary pipes crossed a driveway, Defendant covered those portions of the pipes with asphalt along the width of the driveway.  *Id.* at p. 74.  As such, Defendant placed asphalt over the pipe running across Plaintiff's driveway, and the asphalt that Defendant initially placed over that portion of pipe was never replaced prior to Plaintiff's fall.  *Id.* at pp. 74–75.  As indicated in Defendant's Exhibit No. 10, further up the sidewalk to the left of Plaintiff's driveway was a patch of asphalt which once covered the left-end of the pipe running in front of Plaintiff's home.  *Id.* at p. 78.  Defendant asserts that the asphalt placed over portions of pipe crossing driveways or walkways was a type of asphalt known as a "cold patch."  (ECF No. 34-1 at pp. 1–2, n. 1).  According to Defendant, this type of asphalt "is a malleable form of asphalt that can be shaped

into a dome like structure over the temporary pipe and such that pedestrians are not potentially stepping on cylindrical pipe and that vehicles can drive over the temporary pipe." *Id.*

Starting in September 2018, Defendant began removing the temporary pipes from Matthews Drive. (ECF No. 34-2 at p. 80). In addition to the pipe shown in Defendant's Exhibit No. 10, approximately thirty more feet of pipe ran across the sidewalk to the right of Plaintiff's driveway. *Id.* at pp. 75–76. At the time of Plaintiff's November 11, 2018 fall, this portion of pipe in front of Plaintiff's home remained. *Id.* Although the left-end of the pipe shown in Defendant's Exhibit No. 10 had initially been under a patch of asphalt, the left-end of the pipe began to rise above the asphalt after Defendant disconnected the pipe from other pipes several weeks before Plaintiff's fall. *Id.* at pp. 80–81.[2] Prior to Plaintiff's fall, Plaintiff began complaining to Defendant regarding the pipe left in front of her home. Plaintiff asked Defendant over and over to get the remaining pipe cleaned up. *Id.* at pp. 68–69. The week before Halloween, Plaintiff warned Defendant that children would be coming around and would potentially fall because of the pipe. *Id.* at p. 69. Prior to her fall, Plaintiff informed Defendant that the asphalt was going to get loose and that it was going to be a problem. *Id.* at p. 103. However, during her deposition, Plaintiff stated, "I don't know if I specifically said asphalt is loose. I can't remember if I said that or not. But I told them it was a problem, that it needed to get out of here." *Id.* at pp. 103–04. Furthermore, Plaintiff informed Defendant "[t]hat the pipe has become a problem, that it's lifting up, and it needs to go." *Id.* at p. 104. Plaintiff had told Defendant that the pipes were in the air and that they were a hazard. *Id.* at p. 102.

---

[2] Plaintiff's deposition testimony is unclear and often seemingly contradictory regarding when the left-end of the pipe shown in Defendant's Exhibit No. 10 began to rise above the asphalt which once covered that portion of the pipe. At one point in her deposition, Plaintiff appears to have stated that the pipe began to rise one week before her incident. *Id.* at 80–81. However, later in her deposition, Plaintiff indicated that the pipe was in the condition shown in Defendant's Exhibit No. 10 for weeks prior to Plaintiff's fall. *Id.* at pp. 87–88.

On November 11, 2018, between 5:00 PM and 7:00 PM, Plaintiff and her husband returned home from a day of shopping. *Id.* at pp. 51–52. The day had been a typical Fall day, and Plaintiff does not recall any rainfall. *Id.* at p. 53. Plaintiff's husband was driving them in the husband's large GMC vehicle, and Plaintiff's husband pulled the front of his vehicle directly behind the rear of the white vehicle seen in Defendant's Exhibit No. 10. *Id.* at pp. 92–93. Because Plaintiff could not walk between her husband's vehicle and the vehicle in front of it, Plaintiff walked around the back of her husband's vehicle and attempted to walk on the left side of the asphalt covering the pipe across her driveway. *Id.* at pp. 93 & 95. Plaintiff had an aluminum turkey tray and a grocery bag in her hands. *Id.* at p. 67. The pipe placed across Plaintiff's driveway was still covered by asphalt. *Id.* at p. 94. As Plaintiff's right foot came down on the asphalt covering the pipe placed across Plaintiff's driveway, the asphalt "sunk and gave way[.]" *Id.* at p. 105. Plaintiff then fell to her hands and knees, thereby sustaining various injuries. *Id.* at pp. 105–06.

Regarding the condition of the asphalt covering the pipe placed across her driveway, Plaintiff was aware that the center portion of the asphalt had become more compacted than the outer portions. *Id.* at p. 87. Plaintiff recognized that the asphalt became "thinner and thinner" towards the edges, but Plaintiff said the area on which she tried to walk "looked solid." *Id.* at p. 87. Regarding the state of the asphalt at issue, Plaintiff stated, "[A]ll of it had been becoming loose. The whole thing, because they were pulling pipes up and down the street. I mean, you would only assume it would be loose, a little loose, right, because it's no longer flat anymore." *Id.* at p. 85.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can make such a showing by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Therefore, if there are factual issues "that properly can be resolved only by a finder of fact because [those issues] may reasonably be resolved in favor of either party[,]" then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

"When ruling on a motion for summary judgment, the [C]ourt must construe the facts alleged in the light most favorable to the party opposing the motion." *U.S. ex rel. James Commc'n, Inc. v. LACO Elec., Inc.*, No. DKC 14-0946, 2015 WL 1460131, at *2 (D. Md. Mar. 27, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008)). A party bearing the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.*

### B. Choice of Law

"Federal courts sitting in diversity apply the conflict of law rules prevailing in the states in which they sit." *Havtech, LLC v. AAON Inc.*, No. SAG-22-00453, 2022 WL 1213476, at *4 (D.

Md. Apr. 25, 2022) (citing *Klaxon Co. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Regarding tort claims, "Maryland adheres to the *lex loci delicti* rule in analyzing choice of law problems with respect to causes of action sounding in torts."[3] *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000) (other citations omitted). Under this rule, "the substantive tort law of the state where the wrong occurs governs." *Haunch v. Connor*, 295 Md. 120, 123 (1983). Here, the parties do not dispute that Maryland law applies as the alleged wrong occurred in Maryland. Accordingly, the Court will apply Maryland law.

### III.  ANALYSIS

Under Maryland law, a plaintiff seeking to recover damages in a negligence action bears the burden of proving:

> 1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of the duty.

*Six Flags Am., L.P. v. Gonzalez-Perdomo*, 248 Md. App. 569 (2020) (other citation omitted). "In Maryland, it is well-established premises liability law that the duty of care that is owed by the owner of property to one who enters on the property depends upon the entrant's legal status." *Id.* (other citations omitted). Defendant asserts—and Plaintiff does not disagree—that Plaintiff was

---

[3] On December 14, 2022, "the former Court of Appeals of Maryland [was] renamed the Supreme Court of Maryland and the Court of Special Appeals [was] renamed the Appellate Court of Maryland." MARYLAND COURTS, *Appellate Courts*, https://www.mdcourts.gov/opinions/opinions (last visited Mar. 9, 2023). "This is a change in name only and does not affect the precedential value of the opinions of the two courts issued before the effective date of the name change." *Id.* The Court's citations to Maryland state cases will comply with the Twenty-First Edition of the Bluebook.

an invitee when she fell.[4]  (ECF No. 34-1 at p. 7).  "Maryland has adopted the rule in the Restatement (Second) of Torts § 343 (1965) for the general duty a landowner owes to invitees." *Williams-Stewart v. Shoppers Food Warehouse Corp.*, No. JKS-13-2518, 2014 WL 4406895, at *2 (D. Md. Sep. 5, 2014) (other citation omitted).  Section 343 provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he: (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees; (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect them against the danger.

*Id.*

Here, Defendant has made four arguments for why the Court should grant summary judgment in its favor: (1) there is no genuine issue of material fact regarding Defendant's notice of the condition of the asphalt, (2) Defendant owed no duty to Plaintiff because the condition was open and obvious, (3) Plaintiff assumed the risk, and (4) Plaintiff was clearly contributorily negligent. (ECF No. 34-1 at p. 18).  The Court disagrees with each of Defendant's contentions.

### A. There Is a Genuine Dispute of Material Fact Regarding Defendant's Knowledge of the Asphalt's Condition.

Plaintiff first argues that Defendant "created the dangerous condition." (ECF No. 39-1 at p. 2).  Defendant argues that "the material facts that are not in dispute are that the asphalt 'cold patch' at the subject location was compacted and secure when it was first placed and was still compacted and secure when some pipes [on] either side of Plaintiff's residence were removed." (ECF No. 42 at p. 1).  That is, Defendant argues that there is no genuine dispute about whether

---

[4] Specifically, Defendant contends, "A party that controls a location, as [Defendant] arguably did for those areas where it placed temporary pipes and covered these with asphalt, potentially owes 'a duty of reasonable care to see that the place is safe, but he is not an insurer of the invitee's safety.'" (ECF No. 34-1 at p. 7) (quoting *Link v. Hutzler Bros. Co.*, 25 Md. App. 586, 590 (1975)).  Plaintiff does not challenge Defendant's classification of Plaintiff as an invitee.  As such—without foreclosing the parties' abilities to argue otherwise in the future—the Court will analyze Defendant's Motion in accordance with the parties' understanding of Plaintiff's status as an invitee on land occupied by Defendant.

Defendant's act of removing some pipes itself created loosening or softening of the remaining asphalt; it did not.  The Court agrees with Defendant.  The closest Plaintiff has come to saying that the act of removing the pipes itself caused the loosening of the asphalt was her deposition testimony stating, "Because all of it had been becoming loose.  The whole thing, because they were pulling pipes up and down the streets.  I mean, you would only assume it would be loose, a little loose, right, because it's no longer flat anymore."  (ECF No. 34-2 at p. 85).  However, Plaintiff's Opposition makes clear that "[a]s a result of no longer being fastened at both ends, it began to slowly rise up and out of the asphalt *from cars driving over it*."  (ECF No. 39-1 at p. 3) (emphasis added).  Furthermore, Plaintiff testified that she "told [Defendant] that it's going to get loose, that its going to be a problem."  (ECF No. 34-2 at p. 103).  Even viewing this evidence in the light most favorable to Plaintiff, the only reasonable conclusion is that cars driving over the asphalt at issue—not Defendant's removal of other pipes—caused the asphalt to loosen.  Therefore, Defendant did not create the dangerous condition.

Although the Court concludes that Defendant did not create the dangerous condition, the Court is convinced that a genuine issue of material fact exists concerning Defendant's knowledge of the dangerous condition.  After Defendant removed other pipes from Matthews Drive, Plaintiff called Defendant several times to complain about the pipe at the front of Plaintiff's home.  Although Plaintiff cannot specifically recall if she told Defendant that the asphalt was becoming loose, Plaintiff did tell Defendant that the pipe was rising into the air.  Such notice given by

Plaintiff is sufficient to create a question of fact for a jury regarding Defendant's knowledge—actual or constructive—of the dangerous condition of the asphalt covering the pipe.[5]

### B. Whether the Danger of the Asphalt was Open and Obvious Is a Question for a Jury.

Under Maryland law, "the owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger." *Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F. Supp. 2d 351, 353 (D. Md. 1998) (other citations omitted). "The existence of a legal duty is a question of law, to be decided by the court." *Bonura v. Univ. of Md. Coll. Park*, 2021 WL 1157939, at *3 (Md. Ct. Spec. App. Mar. 26, 2021) (other citation omitted). "There is no exact test or formula by which it may be determined, as a matter of law, that a condition is so open and obvious that an invitee is charged with knowledge of its existence and consents to the risk. Each case must depend on its own facts and circumstances." *Id.* (other citation omitted). "An open and obvious condition is one where the condition and risk are recognizable to a person in the position of a visitor, exercising ordinary perception, intelligence, and judgment."[6] *Palmer v. Brown*, 2020 WL 1812865, at *3 (D. Md. Apr. 9, 2020) (other citations and internal quotation marks omitted). However, "[d]etermining whether a condition presents an open and obvious danger is typically a fact-specific inquiry that usually should be left for the jury." *Gatchell v. Walmart, Inc.*, No. 10-

---

[5] The Court recognizes that Plaintiff makes an argument for the applicability of the doctrine of *res ipsa loquitur*. However, it is not necessary for the Court to rule on the applicability of this doctrine at this juncture. The Court will note that "[a] plaintiff's reliance on *res ipsa loquitur* is generally necessitated . . . by the fact that direct evidence of negligence is either lacking or soley in the hands of the defendant." *Dover Elevator Co. v. Swann*, 334 Md. 231, 237 (1994). Plaintiff's deposition testimony alone indicates that Plaintiff is not lacking in direct evidence of negligence.

[6] The Court recognizes that Maryland courts have not directly clarified whether the decision regarding whether a danger in a premises liability case is open and obvious should be decided by an objective versus subjective standard. When faced with a question of whether a jury instruction classifying the open and obvious standard as objective was proper, the court in *Six Flags Am., L.P.* chose to "not delve into whether this statement is consistent or inconsistent with Maryland law." *Six Flags Am., L.P.*, 248 Md. App. at 590. However, the court concluded that "it is . . . not such an obvious statement of Maryland law supported by the cited authority that the trial court's failure to issue the instruction would constitute an abuse of discretion." *Id.* Whether the Court considers whether the danger Plaintiff encountered was open and obvious under an objective or subjective standard, the Court's determination, as discussed below, would not change.

cv-1649-PWG, 2021 WL 1017396, at *6 (D. Md. Mar. 17, 2021) (other citations omitted). The Court emphasizes that Plaintiff does not contend that she tripped on a pipe that, by her earlier account, had risen up in the air (which might well allow the Court to decide the "open and obvious" issue as a matter of law), but instead that she tripped as a result of asphalt that had softened and subsequently crumbled beneath her.

Defendant has offered the Court several cases to support Defendant's position that the danger of the asphalt which crumbled under the pressure of Plaintiff was open and obvious. (ECF No. 34-1 at pp. 10–12). However, the Court is not convinced that any of those cases compel a finding that the danger in the case *sub judice* was open and obvious as a matter of law. The case most heavily relied upon by Defendant is *Davis-Brown v. Scott Mgmt., Inc.*, No. JKS 13-3319, 2014 WL 6646921 (D. Md. Nov. 20, 2014). In *Davis-Brown*, the plaintiff tripped and fell over a heavy-duty water hose that was stretched across the front of the apartment building in which she lived. *Id.* at *1. Plaintiff had lived at the apartment building for years, and she was aware that the water hose would often run from inside the apartment building and out the door. *Id.* On one occasion when the plaintiff was approaching the hose, the plaintiff noticed a worker adjusting the hose in the doorway. *Id.* Despite knowing that the worker might pull on the hose while the plaintiff crossed over it, the plaintiff still attempted to cross over the hose. *Id.* At the moment of the plaintiff's attempted crossing, the worker pulled on the hose, thereby causing the plaintiff to trip and fall. *Id.* The Court found the danger open and obvious as a matter of law because the plaintiff's deposition testimony made clear that the plaintiff was aware of the exact risk of the worker adjusting the hose while the plaintiff attempted to cross it. *Id.* at *3. Had Plaintiff tripped on the pipe that, by her own prior report, had risen up in the air at the end of her driveway, the case might be sufficiently analogous. Here, however, Plaintiff claims she tripped when the asphalt covering

10

the pipe crossing her driveway crumbled under her pressure. The evidence before the Court, viewed in the light most favorable to Plaintiff, does not indicate that Plaintiff's understanding of the risk posed by the asphalt was as strong as the plaintiff's understanding of the risk posed by the hose in *Davis-Brown*. While Plaintiff believed that the asphalt at issue may have become loose, Plaintiff (1) claims that she did not appreciate just how loose it had become, and (2) claims that the portion of asphalt on which she tried to walk looked solid.

The Court searched other jurisdictions to find cases factually similar to Plaintiff's. One such case is *Baker v. Tendercare (Michigan), Inc.*, No. 275499, 2008 WL 1733669 (Mich. Ct. App. 2008). In *Baker*, the plaintiff stepped on a crack in the cement of a parking lot, the cement then gave way under her foot, and the plaintiff fell. *Id.* at *1. The Court of Appeals of Michigan, applying an objective standard, held that the danger of the parking lot was open and obvious based upon the "plainly visible cracks and other defects[]" in the parking lot. *Id.* at *2. In *Crawford v. CVS/Pharmacy #38105*, No. 248378, 2004 WL 2291384 (Mich. Ct. App. Oct. 12, 2004), the parking lot underneath a plaintiff crumbled after the plaintiff unknowingly stepped on cracks. *Id.* at *2. The Court of Appeals of Michigan held that the danger of the parking lot was open and obvious based upon "photographic evidence clearly show[ing] the asphalt crumbling and cracking in the parking lot." *Id.*

The Court has also considered a case from the Court of Appeals of Ohio: *Daniels v. Verai Enters., Inc.*, No. C-110440, 2012 WL 1865709 (Ohio Ct. App. May 23, 2012). In *Verai Enters., Inc.*, the plaintiff knowingly walked along the edge of a pothole in the parking lot of grocery store before the plaintiff entered the grocery store. *Id.* at *1. After making purchases within the grocery store, the plaintiff again attempted to walk along the edge of the pothole while returning to her vehicle. *Id.* However, on this second occasion, the plaintiff fell and broke her ankle as a result of

the asphalt along the edge of the pothole crumbling beneath her. *Id.* The court held that the danger the plaintiff encountered was open and obvious because the plaintiff's deposition testimony "conclusively demonstrate[d] that the surface [the plaintiff] walked along at the edge of the pothole was also visibly deteriorating." *Id.*

Plaintiff's case is distinguishable from *Baker* and *Crawford* because Plaintiff has not provided any testimony indicating that the asphalt at issue was in a state of significant disrepair. Rather than allege that the asphalt was cracking or crumbling, Plaintiff merely testified that the asphalt became thinner towards its edges, and Plaintiff assumed that the asphalt was loosening. Furthermore, Plaintiff's case is distinguishable from *Verai Enters., Inc.* because Plaintiff has not claimed that the asphalt at issue was visibly deteriorating in the same sense that the asphalt around a pothole visibly deteriorates. The Court would be remiss if it did not acknowledge a key difference between the asphalt surrounding a pothole as compared to asphalt—specifically a cold patch—placed over a temporary pipe. Potholes are common signs of evident deterioration in asphalt. However, Defendant itself admits that the asphalt cold patches placed over temporary pipes are placed specifically to ensure the ability of vehicles and individuals to cross such temporary pipes. Lastly, the photographic exhibits on which Defendant relies do not depict to the Court a patch of asphalt in such a state of disrepair that its danger is open and obvious as a matter of law.[7]

---

[7] Regarding Defendant's Exhibit No. 12, the Court recognizes that the condition depicted in that photograph may well weigh in favor of finding that the danger of the asphalt at issue was open and obvious as a matter of law. However, Plaintiff maintains that this photograph was likely taken a couple days after her fall and that the condition of the asphalt in that photograph was different than the condition of the asphalt on the day of Plaintiff's fall. (ECF No. 34-2 at p. 84).

Accordingly, the Court cannot determine as a matter of law that the danger of the asphalt crumbling under Plaintiff's weight was open and obvious, thereby eliminating any duty which Defendant may have owed Plaintiff.

### C. Plaintiff Did Not Assume the Risk as a Matter of Law.

"In Maryland, assumption of the risk is an affirmative defense, which rests upon the plaintiff's consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of harm from a particular risk." *Woods v. Dolgencorp, LLC*, No. TJS-15-3294, 2017 WL 4785057, at *3 (D. Md. Oct. 18, 2017) (other citation and internal quotation marks omitted). "It is a complete bar to plaintiff's recovery." *Id.* "To prevail on the defense of assumption of the risk, the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *Id.* (other citation omitted). "Like contributory negligence, the issue of assumption of risk is ordinarily reserved for a jury." *Id.* (other citation omitted).

Defendant argues that "Plaintiff was well aware from her own observations that the condition of the asphalt at the location where she stepped and fell had deteriorated, being in a loose and crumbling state."[8] (ECF No. 34-1 at p. 14). The Court disagrees. Having reviewed Plaintiff's deposition transcript, the Court recognizes that Plaintiff testified about the asphalt crumbling after she stepped on it, but Plaintiff did not assert that she noticed the asphalt on which she walked crumbling prior to her fall.[9] Furthermore, Plaintiff's deposition testimony is unclear regarding whether Plaintiff knew that the asphalt on which she fell was loose, or whether Plaintiff merely

---

[8] To the extent Defendant argues that the door hanger containing the warning informed Plaintiff of the danger, the Court concludes that this will also be a question appropriately left to a jury.

[9] Review of the index of Plaintiff's deposition transcript confirms that "crumble"—or some variation of that word—appears only three times throughout Plaintiff's deposition. (ECF No. 34-2 at p. 147).

assumed that it was loose or loosening. Even if Plaintiff had assumed that the asphalt was loose, Plaintiff is adamant that (1) she did not appreciate how loose the asphalt had become, and (2) that it looked solid when she stepped on it. Furthermore, of course, the asphalt had originally been placed by Defendant specifically to allow persons and vehicles to traverse it without damaging the pipe underneath.

Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff assumed the risk as a matter of law. This question is for a jury.

### D.  Plaintiff Was Not Contributorily Negligent as a Matter of Law.

In Maryland, "[c]ontributory negligence is the neglect of the duty imposed upon all men to observe ordinary care for their own safety." *Woods*, 2017 WL 4785057 at *3 (other citation omitted). "Ordinarily, the question of whether a given plaintiff was contributorily negligent is a question reserved for the jury." *Id.* (other citations omitted). "In very narrow circumstances, a court may decide the issue of contributory negligence as a matter of law." *Id.* (other citations omitted). "The burden to prove contributory negligence rests on the defendant." *Id.* (citing *Faith v. Keefer*, 127 Md. App. 706, 746 (1999)).

> Contributory negligence as a matter of law requires a finding that the negligent act of the plaintiff . . . relied upon must be prominent, decisive and one about which ordinary minds would not differ in declaring it to be negligence. The standard of care to be used in measuring contributory negligence is the conduct of an ordinarily prudent person under similar circumstances; and even if the act done turns out to be an error of judgment, this alone does not make the act negligent if an ordinarily prudent person may have made the same error.

*Woods*, 2017 WL 4785057 at *3 (quoting *Faith*, 127 Md. App. at 746–47)).

Here, Defendant argues that "Plaintiff was contributory [*sic*] negligent because the condition at issue was open and obvious." (ECF No. 34-1). The Court has already concluded that whether the danger of the asphalt was open and obvious cannot be determined as a matter of law.

Plaintiff herself indicated that despite the asphalt becoming thinner towards its edges, Plaintiff thought that the asphalt was solid enough to walk across.  The Court is unable to conclude that the facts before it present an occasion of negligence on behalf of Plaintiff to which ordinary minds could not differ.  *See Woods*, 2017 WL 478057 at *3 (the Court accepted a plaintiff's contention that "a jury could reasonably find that walking on a floor mat placed in front of a store, *whose purpose is to be walked on and to prevent falls*, does not amount to negligence.") (emphasis added).  Accordingly, whether Plaintiff was contributorily negligent is a question that a jury must decide.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 34) is denied.  A separate order follows.

Date: <u>April 28, 2023</u>                                            <u>          /s/          </u>
                                                                                 J. Mark Coulson
                                                                                 United States Magistrate Judge